IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLSTATE PROPERTY AND ) <br> CASUALTY INSURANCE COMPANY ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LARRY G. SQUIRES, ) <br> ) <br>     Defendant. ) | Civil Action No: 10-1458 |

MEMORANDUM OPINION

CONTI, District Judge

## I.    Introduction

Pending before the court are three motions: 1) a motion for judgment on the pleadings (the "Motion") (ECF No. 9), filed by Allstate Property and Casualty Insurance Co. ("Allstate" or "plaintiff"), pursuant to Federal Rule of Civil Procedure 12(c) with respect to uninsured motorist ("UM") claims filed by Larry G. Squires ("Squires" or "defendant") with Allstate; 2) a motion to dismiss Squires' counterclaim for breach of contract (ECF No. 12); and 3) a motion to dismiss Squires' bad faith counterclaim under 42 PA. CONS. STAT. 8371, or in the alternative to sever and stay. (ECF No. 10.) Because the Motion is dispositive, the court will not address the motions to dismiss. Allstate's Motion will be granted because, as a matter of law, Squires is not entitled to UM benefits under the policy of insurance (No. 0 77 127441) issued by Allstate (the "Policy).

## II.     Procedural and Factual Background

On November 2, 2011, Allstate filed a two-count complaint for declaratory judgment (the "Complaint") (ECF No. 1) requesting the court to declare that Squires is not entitled to UM benefits under the Policy on the basis, among others, that the underlying motor vehicle accident ("Underlying Accident") was not a result of the ownership, maintenance, or use of a motor vehicle.  On December 14, 2010, Squires filed an answer to the Complaint and two counterclaims: 1) breach of uninsured motorist contract; and 2) bad faith under 42 PA. CONS. STAT. 8371.  (ECF No. 5.)  On January 3, 2011, Allstate filed the Motion and two motions to dismiss.  On January 28, 2011, Squires filed responses to each motion.  (ECF Nos. 18–20.)  On February 9, 2011, a hearing was held on the motions.

Allstate's declaratory action arises from Squires' claim for UM benefits resulting from injuries sustained in the Underlying Accident.  (Compl. ¶¶ 7, 9.)  At the time of the Underlying Accident, Squires was insured under the Policy, which provided UM benefits subject to certain exclusions.  (Id. ¶¶ 4, 7-9.)  The Underlying Accident occurred on State Highway 51 in Center Township, Beaver County, Pennsylvania while Squires was driving alone in his pick-up truck. (Id. ¶¶ 10-11.)  Squires was injured after he lost control of his vehicle when he swerved to avoid a box on the road.  (Id. ¶ 12.)  Squires did not see the box fall onto the roadway from another motor vehicle and acknowledged he does not know how it came to be there, what it was being used for, or who made or owned the box.  (Id. ¶¶ 13-14.)

The Policy provides, in relevant part:

> **UNINSURED MOTORISTS INSURANCE COVERAGE SS**:
>
> If a limit of liability is shown on **your** declarations page for Uninsured Motorists Insurance – Coverage SS, **we** will pay damages to an insured person for **bodily injury** which an insured

2

> person is legally entitled to recover from the owner or operator of an uninsured auto. **Bodily injury** must be caused by accident and arise out of ownership, maintenance, or use of an uninsured auto.

(Id. ¶ 15; Ex. A at 11; ECF Nos. 1-2 at 14, 33) (emphasis in the original and related to Policy No. 0 77 127441 07/01, renewed for the period of July 1, 2008 to January 1, 2009).

### III. Legal Standard

Federal Rule of Civil Procedure 12 governs a motion for judgment on the pleadings and provides in relevant part:

> **(c) Motion for Judgment on the Pleadings.** After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings.

FED. R. CIV. P. 12(c).

The standard for deciding a motion for judgment on the pleadings is the same utilized to decide a motion to dismiss under Rule 12(b)(6).[1] DiCarlo v. St. Mary Hosp., 530 F.3d 255, 262-63 (3d Cir. 2008). The court must accept as true all well-pled allegations of fact in the pleadings and draw every reasonable inference in favor of the party against whom judgment is sought. Id.; Churchill v. Star Enters., 3 F. Supp.2d 625, 627 (E.D. Pa. 1998) (citing FED. R. CIV. P. 12(c)). In

---

[1] A motion to dismiss tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002); see Jones v. ABN Amro Mortg. Group, Inc., 606 F.3d 119, 125-26 (3d Cir. 2010) (affirming district court denying request to amend on the basis that additional amendment would be "both futile and inequitable" because there was "no indication" that repleading would correct the defects) (citing Travelers Indem. Co. v. Dammann & Co., 594 F.3d 238, 256 n.14 (3d Cir. 2010).

ruling on a motion for judgment on the pleadings, a district court generally may not consider matters extraneous to the pleadings. An exception to the general rule, however, allows a court to consider documents integral to or explicitly relied upon in the complaint without converting the motion into one for summary judgment. Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 256 n.5 (3d Cir. 2004). The court will consider matters of public record and authentic documents, attached to the complaint or motion. Churchill, 3 F. Supp. 2d at 627. The Court of Appeals for the Third Circuit recognized that

> "the Rule 12(c) motion is little more than a relic of the common law and code era," 5A *Federal Practice* at 537, and it "only has utility when all the material allegations of fact are admitted in the pleadings and only questions of law remain." *Id.* at 510. Granting a Rule 12(c) motion results in a determination on the merits at an early stage in the litigation, and thus this court requires "the movant [to] clearly establish [ ] that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law."

Inst. for Sci. Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.*,* 931 F.2d 1002, 1005 (3d Cir.1991) (quoting Jablonski v. Pan Am. World Airways, Inc.*,* 863 F.2d 289, 290-91 (3d Cir.1988)).

Courts disfavor motions for judgment on the pleadings and apply a restrictive standard when ruling on such motions. WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE §1368 (3d ed. 2009). If it is clear based upon the undisputed factual allegations that there is no cognizable claim, the complaint must be dismissed, or, as in this case, there must be a declaration that under the circumstances no claim exists as a matter of law.

**IV. Discussion**

The Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL") defines "uninsured motorist coverage" as:

> UNINSURED MOTORIST COVERAGE—
>
> Uninsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of uninsured motor vehicles.

75 PA. CONS. STAT. § 1731.

For Squires to recover under the UM provisions of the Policy, his injuries must be caused by accident and arise out of ownership, maintenance, or use of an uninsured auto. Allstate argues that - taking all Squires' allegations as true and assuming that the box fell from an uninsured motor vehicle - Squires is not entitled to benefits under the Policy, because it is clear from the pleadings that the cause of the accident was the box on the road and not the ownership, maintenance, or use of an uninsured automobile. Squires disagrees.

The crux of the issue at hand is interpreting the last sentence of the UM provisions in the Policy, i.e., that the "**[b]odily injury** must be caused by accident and arise out of ownership, maintenance, or use of an uninsured auto," in light of the circumstances under which the Underlying Accident occurred. (Id. ¶ 15; Ex. A at 11; ECF Nos. 1-2 at 14, 33) (emphasis in the original). The sole narrow issue before the court is whether an accident caused by a box which fell from an uninsured motor vehicle can be attributed, as a matter of law, to the "ownership, maintenance or use" of an automobile.

For purposes of the motion for judgment on the pleadings, Allstate concedes that the vehicle, from which Squires assumes the box was deposited, is "unidentified" and that vehicles

which are unidentified in this context are considered "uninsured" for the purposes of the UM coverage analysis. (Pl.'s Mot. Judgment on the Pleadings 5.) Allstate argues that Squires is not entitled to UM benefits because Squires' alleged injuries were not caused by the ownership, maintenance, or use of a motor vehicle. As a matter of law, Allstate asserts that an accident caused by an object in the road does not arise out of the ownership, maintenance, or use of a motor vehicle. Allstate relies upon Smith v. United Services Automobile Association, 572 A.2d 785 (Pa. Super. Ct. 1990) (holding that, as a matter of law, accident caused by hay thrown from a vehicle was not caused by the ownership, maintenance, or use of a motor vehicle); American National Property & Casualty Co. v. Terwillinger, Civ. A. No. 06-268, 2007 WL 433180, at **6-7 (W.D. Pa. Feb. 7, 2007) (holding that, as a matter of law, accident which occurred when an insured lost control of his motorcycle due to gravel on the road was not caused by the ownership, maintenance, or use of a motor vehicle); and State Farm Automobile Insurance Co. v. Adragna, Civ. A. No. 291-2009-Civil (Pa. Ct. Com Pl. (Pike County) May 5, 2010) (finding that accident caused by bundles dropped from a vehicle did not arise out of the ownership, maintenance or use of an uninsured vehicle).

In Smith, the plaintiff was a minor who contended that he lost control of his bicycle when a boy riding in a hay wagon threw hay in his face. The trial court dismissed the plaintiff's petition to compel arbitration for UM and underinsured motor vehicle benefits on the basis that the alleged injuries were not caused by the ownership, maintenance, or use of a motor vehicle. The Pennsylvania Superior Court affirmed the trial court decision stating, "'[a]utomobile insurance, including uninsured motorist provisions, are designed to compensate victims for *vehicle-caused* injuries.'" Smith, 572 A.2d at 786 (quoting Schweitzer v. Aetna Life & Cas.Co., 452 A.2d 735, 737 (Pa. Super. Ct. 1982) (emphasis added)). "[I]n determining whether the

injury arose out of the ownership, maintenance or use of the motor vehicle, we must look to the '*instrumentality used to cause* the injury.'" Id. (quoting Spisak v. Nationwide Mut. Ins. Co., 478 A.2d 891, 893 (Pa. Super. Ct. 1984) (emphasis in original). The superior court's analysis focused upon the instrumentality which caused the injury. The court determined that no liability existed unless the instrumentality causing the injury was a vehicle. "We have previously interpreted the phrase 'maintenance and use of a motor vehicle' to mean the 'maintenance or use of a motor vehicle *as a vehicle,* including, incident to its maintenance or use as a vehicle, occupying, entering into, or alighting from it.'" Id. at 787 (quoting Camacho v. Nationwide Ins. Co., 460 A.2d 353, 354 (Pa. Super. Ct. 1983), aff'd per curiam, 473 A.2d 1017 (Pa. 1984).

The superior court in Smith instructed that "'there must be some causal connection between the injuries and the use of the motor vehicle.'" Id. (quoting Alvarino v. Allstate Ins. Co., 537 A.2d 18, 21 (Pa. Super. Ct. 1988)). "'The causal connection need not rise to the level of proximate causation; however, ... the connection must be more than mere happenstance.'" Id. (quoting Roach v. Port Auth. of Allegheny Cnty, 550 A.2d 1346, 1350 (Pa. Super. Ct. 1988)). In determining that the plaintiff's injuries were caused by the intentional act of the boy throwing the hay, and not by the use of the hay wagon, the superior court concluded that the act was "a source which [was] external to the vehicle, and not the vehicle itself." Id. The superior court found that the use of the vehicle was "irrelevant to the question of whether the vehicle was the instrumentality which caused the injury. . . . and that the injury [could not ] be said to arise from the ownership, maintenance or use of the vehicle." Id.

In Terwillinger, the district court was concerned with a situation in which the defendant-insured sustained injuries when he lost control of his motorcycle due to gravel that was on the road. Similar to the Policy language in the instant case, the policy language in issue in

Terwillinger provided that the "bodily injury must be caused by the accident and result from the ownership, maintenance, or use of the vehicle." Terwillinger, 2007 WL 433180, at * 5. The plaintiff-insurer in that case argued that the defendant's injuries were not caused by the ownership, maintenance, or use of a motor vehicle. In granting the insurer's motion for summary judgment, the district court stated:

> The vehicle must be more than merely incidental to the injury—it must be the instrumentality which caused the injury.
>
> Here, the vehicle (either the Penn DOT vehicle or the phantom vehicle) was merely incidental. The cause of [the insured's] injury was the road debris, as he himself acknowledges . . . .

Id. at *7.

In Adragna, the state trial court considered a situation which was strikingly like the facts of the instant case. In a declaratory relief action, the insured defendant in Adragna asserted that she was injured in a one-vehicle accident when she swerved to avoid bundles of insulation on the road that "must have" been deposited by a phantom vehicle. Adragna, Civ. A. No. 291-2009-Civil, at *5. In granting relief to the insurer plaintiff, the state trial court concluded that Terwillinger and Smith "taken together, . . . stand [] for the proposition that, when foreign material on a roadway causes a motor vehicle accident, an uninsured . . . motorist provision in an insured claimant's automobile insurance policy does not provide coverage for the loss." Id.

Squires argues that he is entitled to recover damages because a negligent phantom driver ostensibly dropped the box onto the highway and caused the Underlying Accident. Squires contends that the act of dropping a box by a driver who failed to secure it arises from the ownership, maintenance, or use of a motor vehicle. Squires attached an investigator's report which included several photographs of the portion of the road where the accident occurred, along

8

with signed statements by the two paramedics who treated Squires at the scene of the accident. The paramedics averred that they saw a cardboard box on the roadway. Squires maintains that the photographs clearly show that there are no businesses or residential dwellings, overpasses, or sidewalks near the area of the accident. Squires concludes that it could not have been a pedestrian who left the box on the road, and therefore must have been a negligent "phantom" driver.

Squires argues that the decisions in <u>Smith</u> and <u>Terwillinger</u> are distinguishable on the facts from this case and that the court in <u>Adragna</u> erred in not recognizing those distinctions. Squires contends that the court in <u>Smith</u> found that the vehicle was incidental to the injury because the court focused on the intentional act by a person riding on the hay wagon of throwing hay which caused the child to crash his bicycle. Squires maintains that the court reasoned that the use of the vehicle was not in issue because the driver of the vehicle had nothing to do with the injury. Similarly, Squires argues that the facts in <u>Terwillinger</u> are distinguishable because in <u>Terwillinger</u> the insured claimed that the PennDOT truck caused the gravel to be deposited onto the roadway. Squires argues that the reason the court determined that the PennDOT truck was incidental to the accident was because, although the truck was used by PennDOT personnel to deliver the gravel to the site, it was the negligent patching of the pothole that caused the gravel to be in the road and which a phantom driver kicked up. In contrast, Squires argues that the box in the road in this case had to been deposited by a negligent driver of an auto, and provides Squires with a claim against the driver sounding in negligence. Squires' attempt to distinguish the decisions in <u>Smith</u> and <u>Terwillinger</u> under a legal theory of negligence is not persuasive, however, because the issue is not negligence; rather, the issue is whether the vehicle was the instrumentality that caused the Underlying Accident.

Squires argues that State Farm v. DiPetro, Civ. A. No. 89-948, 1989 U.S. District LEXIS 13788 (E.D. Pa. Nov. 16, 1989), a decision which predates the superior court's decision in Smith and the district court's decision in Terwillinger, should control. In DiPetro, the defendant was injured when his car spun out of control and struck another vehicle after skidding on an unknown substance on the highway. In denying the insurer's motion for declaratory judgment, the district court, in a two-page opinion, stated:

> Under the prevailing Pennsylvania law uninsured motorist benefits may be awarded to an individual covered by an automobile liability policy if that individual is involved in an accident with an unknown vehicle even where there is no physical contact between the unknown vehicle and the vehicle in which the claimant is riding.

DiPetro, 1989 U.S. District LEXIS 13788, at *1 (citing Mitchell v. Prudential Prop. & Cas. Ins. Co., 499 A.2d 632 (Pa. Super. Ct. 1985); Webb v. U.S. Auto. Ass'n., 323 A.2d 737 (Pa. Super. Ct. 1974)). The district court in its abbreviated analysis stated:

> At trial both sides offered evidence which shed absolutely no light on the basic issues. What was the substance? How did it get there? The probabilities are that it was either fuel, a lubricant or a coolant and given the fact this it was on a limited access highway, the probabilities also are that it got there through the agency of an unknown driver operating an unidentified vehicle.
>
> I recognize that this analysis suggests that any injury or damage caused by road debris foreign to the highway surface could give rise to an uninsured motorist claim. However, that is the direct[ion] in which the Pennsylvania cases point.

Id. at *2. The court, however, did not cite any Pennsylvania decisions to support the prediction about the direction of Pennsylvania law. DiPetro predated the decision of the Pennsylvania Superior Court in Smith, which negates that prediction. No decision by a Pennsylvania court after the opinion in DiPetro was issued supports the outcome predicted in that decision.

10

This court is persuaded by the rationales set forth in Terwillinger, which relied upon Smith, and in Adragna, which relied upon Terwillinger and Smith. Each decision considered, under Pennsylvania law, circumstances where there was an accident caused by a foreign body on the road or thrown from a vehicle. The critical issue was whether the foreign body was the instrumentality that caused the accident. Whether or not the box in the case at hand was deposited on the road from an uninsured motor vehicle or by the driver of an uninsured motor vehicle is irrelevant. The determinative fact is that the instrumentality causing the Underlying Accident was a box - not a vehicle. At best, the uninsured motor vehicle was incidental to the Underlying Accident. In other words, the box was "a source which is external to the vehicle, and not the vehicle itself." Smith, 572 A.2d at 787. As stated in Smith,

> The fact that the hay was used is simply irrelevant to the question of whether the vehicle was the instrumentality which caused the injury.. . . Because we are unable to discern any causal connection between the vehicle and the injury, the injury cannot be said to arise from the ownership, maintenance or use of the vehicle.

Id.

Because the Underlying Accident did not arise out of the ownership, maintenance or use of an uninsured automobile, there is no coverage for Squires' injuries under the UM provisions of the Policy. Therefore, the court must declare that Squires does not have a claim for UM benefits.

## V. CONCLUSION

Allstate's Motion will be granted because, as discussed above and in the hearing held on February 9, 2011, Squires, as a matter of law, is not entitled to UM benefits under the Policy issued by Allstate. An appropriate order will be entered.


Date: March 2, 2011.                    /s/ JOY FLOWERS CONTI
                                        Judge Joy Flowers Conti
                                        United States District Judge